**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
_____X
**OLIVIA FORDE,**                                                     06 Civ. 901 (DC)(DCF)

                                **Plaintiff,**         **PLAINTIFF'S STATEMENT OF**
                                                           **DISPUTED FACTS PURSUANT**
                                                           **TO LOCAL CIVIL RULE 56.1**

      **-against-**

**BETH ISRAEL MEDICAL CENTER,**
**and STEVEN ARSHT, M.D., individually,**

                                **Defendants.**
_____X

Pursuant to Local Rule 56.1 of the Civil Rules of this Court, Plaintiff Olivia Forde ("Plaintiff" or "Forde"), by her attorneys, The Law Offices of Lee Nuwesra, respectfully submits her statement of disputed material facts in opposition to Defendant's BETH ISRAEL MEDICAL CENTER and STEVEN ARSHT, M.D. individually, Summary Judgment Motion's statement of undisputed material facts. In accordance with Local Rule 56.1, the following statements of material facts contain genuine issues to be tried.

1.      Admitted.

2.      Admitted.

3.      **Denied.** Due to the closing of the Singer Division, Plaintiff was laid off by Defendant Hospital. (Forde Dep. Pg(s). 20-21, Pl's Decl. Par., 5, attached to Nuwesra's Affirmation).

4.      Admitted.

5.      Admitted.

6.      Admitted.

7. Admitted.

7(a). Arsht's Office Manager position was similar to that of a secretary. (Arsht Dep. Pg(s). 75-76, attached to Nuwesra's Affirmation).

8. Admitted.

9. Admitted.

10. Admitted.

11. Admitted.

12. Admitted.

12(a). Between February and June 2005, Plaintiff was the only employee Dr. Arsht had. At that time, she essentially served as Dr. Arsht's Secretary. (Pl's Decl. Par(s). 9, 13).

13. **Denied.** Although Plaintiff was given the title of Office Manager, she was never given the job description of that position. Prior the hiring of Ms. Fuentes on June 6, 2005, Plaintiff was Dr. Arsht's Secretary. (Forde Dep. Pg(s). 39-41; Arsht Dep. Pg(s). 75-76, and McCann Dep. Pg. 13, attached to Nuwesra's Affir. as Exh. 3).

14. **Denied.** During Plaintiff's initial tenure, from February to June 2005, Plaintiff was the Secretary of Dr. Arsht, albeit with the glorified title of Office Manager. (Forde Dep. Pg(s). 39-41; Pl's Decl. Par(s). 9, 13; McCann Dep. Pg. 13, attached to Nuwesra's Affirmation).

15. Admitted.

16. **Denied.** Plaintiff was the secretary of Arsht's practice, between February and June 2005. During this time period there was only one part time temporary employee, who worked one day a week; and in essence functioned as a filing clerk. (Forde Dep. Pg(s). 38, 171-172; Pl's Decl. Par. 7).

17.     Admitted.

17(a).  The Department Administrator during Plaintiff's tenure was Mr. Patrick Haughey. Besides Defendant Arsht he was the only one to directly supervise Plaintiff Forde. (Pl's Exh. 14).

18.     **Denied**. Ms. Bahr never held any supervisory authority over Plaintiff. Her function was to order office supplies, and schedule the staff's various leaves. (Forde Dep. Pg. 37; Forde Decl. Par. 12; Pl's Exh. 14).

19.     **Denied**. (Id.).

20.     **Denied**. While given the glorified title of Office Manager, Plaintiff functioned as Defendant Arsht's secretary, from February 14, 2005 to June 6, 2005. (Forde Dep. Pg(s). 39-41; Arsht Dep. Pg(s). 75-76; McCann Dep. Pg. 13; Forde Decl. Par(s). 9, 13).

21.     **Denied in part**, admitted in part. Although Plaintiff was non union employee, she did not supervise anyone until June 2005. (Forde Dep. Pg(s). 39-41, 171-172; Forde Decl. Par(s). 9, 13).

22.     **Denied**. Pursuant to Defendant's Hospital Policy, Plaintiff, who was laid off after the selling/closing of the Singer Division, should have been considered as a rehire. (Forde Decl. Par(s). 4-5).

23.     **Denied**. Pursuant to Defendant's Hospital Policy, Plaintiff, who functioned as Dr. Arsht's secretary was a Non-Union Clerical Employee.  Accordingly, she was only required to successfully complete a three-month probationary period. (Pl's Exh. 9, Forde Dep. Pg(s). 39-41, 171-172; Arsht Dep. Pg(s). 75-76; McCann's Dep. Pg. 13; Handler's Dep. Pg(s). 33, 67-68, attached to Nuwesra's Affirmation).

24.     **Denied**. At various times, Plaintiff functioned in different capacities. Initially she served as Arsh't Secretary. After Ms. Fuentes was hired, she began to act as Office Manager. (Forde Dep. Pg(s). 39-41, 171-173).

25.     **Denied**. Kurlander had no supervisory position over Plaintiff. Moreover, she was too busy tending to her other duties as Chief Physician Assistant. (Kurlander Dep. Pg(s). 12, 19, 36).

26.     **Denied**. Kurlander did not interact with Plaintiff on a daily basis. She was too busy tending to her other duties as Chief Physician Assistant. (Forde Decl. Par(s). 30, 38).

27.     **Denied**. (Id. See responses 25-26 above).

28.     Denied. This function has always been the responsibility of Ms. Potts. (Dr. Arsht's Dep. Pg(s). 19-20).

29.     **Denied**. Ms. Kurlander had no supervisory authority over Plaintiff. Moreover, Kurlander testified that Plaintiff was pleasant and professional towards her, and Ms. Forde never refused any requests by Ms. Kurlander. (Kurlander Dep. Pg(s). 32, 36, 46; Forde Decl. Par(s). 11, 12).

30.     **Denied**. During her tenure, Plaintiff was never apprised of these belated inadmissible hearsay statements by Ms. Kurlander. (Forde Decl. Par(s). 11-12, 17-18).

31.     **Denied**. Plaintiff's working hours were: Monday thru Friday, 8:00 a.m. to 4:00 p.m., with lunch taken from 12:00 noon to 1:00 p.m. The only things that the answering service or voicemail would be activated was when Ms. Forde was not in the office. (Forde Dep. Pg. 77; Forde Decl. Par(s). 13, 16).

32.    **Denied**. Plaintiff always did what was required of her, as per Dr. Arsht's changing instructions. (Forde Dep. Pg(s). 76-78, Forde Decl. Par(s). 10-11).

33.    **Denied**. (Id. See responses 30 and 32, above).

34.    **Denied**. (Id. See responses 30, 32 above).

35.    **Denied**. Said accordion folder was exclusively entrusted to Ms. Fuentes. Whatever files or dictations it contained, were the responsibility of Ms. Yelena Fuentes since she began working in early June 2005. (Fuentes Decl., dated December 14, 2007, Paragraph 11).

36.    **Denied**. (See responses 30, 32 above).

37.    **Denied**. (Id. See responses 30, 32 above). Moreover, if there was more than one request for patients' charts by attorneys, it was because Dr. Arsht demanded that he be paid in advance of releasing said documents. (Fuentes Decl. Par. 5; Forde Decl. Par. 15).

38.    **Denied**. During Plaintiff's tenure, she hardly saw or interacted with Ms. Kurlander. In her capacity as the Chief Physician Assistant, supervising 7 other physician assistants, and seeing many of Dr. Arsht's patients, as well as assisting in surgeries, Ms. Forde hardly saw her. There were never any meetings held with Kurlander, weekly or otherwise. Ms. Kurlander was too busy performing her clinical and supervisory duties. (Forde Decl. Par(s). 12, 17-18).

39.    **Denied**. (Id. See response 38 above).

40.    **Denied**. Ms. Bahr had no supervisory authority over Plaintiff. Moreover, at no time did Ms. Bahr indicate to Ms. Forde that her performance was lacking. (Forde Dep. Pg(s). 37; Forde Decl. Par(s) 12, 17-19).

41.    **Denied**. (Id. See response above.

5

42.     **Denied**. At no time did Ms. Bahr ever request that Plaintiff cover the front desk. (Forde Decl. Par. 17).

43.     **Denied**. At no time did Ms. Bahr advise Plaintiff of this telephone call. Notwithstanding the foregoing, by this time, Ms. Fuentes had been trained and capable of handling this aspect of the job. (Forde Decl. Par(s). 12, 13, 17-19).

44.     **Denied**. (Id. See response 43 above).

45.     **Denied**. (Id. See response 35 above).

46.     **Denied.** During Plaintiff's tenure with Defendant Arsht's practice, he never brought to her attention any poor work related issues. Rather, he always complimented her work performance and work ethics. He even regularly treated her for lunches at the office. (Forde Dep. Pg(s). 1, 5; Forde Decl. Par(s). 11, 20).

47.     **Denied**. (Id. See response 46 above).

48.     **Denied**. Prior to hiring Ms. Fuentes in June 2005, Dr. Arsht's practice was suffering, due to the lack of appropriate staffing. Notwithstanding the foregoing, Defendant Arsht conceded that his practice income level from May through July was satisfactory. (Forde Dep. Pg(s). 171-173; Forde Decl. Par(s). 8, 10; Arsht Dep. Pg(s). 83, 87, 96, 112-113).

49.     **Denied**. At no time during her tenure with Defendant Arsht, did Dr. Arsht relate to her that she exhibited poor communication skills, or that there was patient complaints concerning her. (Forde Dep. Pg(s). 76-78; Forde Decl. Par(s). 11, 20).

50.     **Denied**. (Id. See response 49 above).

51.     **Denied**. (Id. See response 49 above).

52.     **Denied**. Dr. Arsht testified that he never contacted Ken Handler prior to June 2005. (Arsht Dep. Pg(s). 71-72, 92-95).

53.     **Denied**. Said document is not indicative of Plaintiff's performance problems. Rather it is clearly an inquiry. (Defendant's Exhibit C, attached to Arsht's Declaration).

54.     **Denied**. Said documents are neutral or their face, and do not reflect that Plaintiff had performance problems. To the contrary, as reflected in Defendant's Exhibit 14, and testified to by Plaintiff, because of the lack of appropriate staffing between December 2004 and June 2005, there was a great backlog in filing, amongst others. (Forde Dep. Pg(s). 76-78; Forde Decl. Par(s). 11, 20).

55.     **Denied**. At no time did Dr. Arsht discuss the content of this July 26, 2007 e-mail with Plaintiff. Interestingly, it was sent to Bahr, a day after Ms. Forde advised Arsht that she will be getting a sonogram at Beth Israel the following day, July 27, 2005. (Forde Dep. Pg(s). 94-99).

56.     **Denied in part**, admitted in part. While Plaintiff admitted to receiving some of the e-mails, she testified that she viewed them as constructive communication by Dr. Arsht, as he was changing his procedure very often, since he was only in his young practice for a couple of years. (Forde Dep. Pg(s). 50, 63-64, 76-78; Forde Decl. Par(s). 8, 10, 11).

57.     **Denied**. The document clearly concludes by stating that he planned to have "…a staff meeting either Wednesday afternoon or Friday." And that he would let them know. (Defendant's Exh. 18, attached to Forde's transcript). However, this meeting never took place. (Fuentes Decl. Par(s). 6-7).

7

58.     **Denied**. In Dr. Arsht's Sunday, July 10, 2005 e-mail to Plaintiff, he indicates, amongst others, that he would like to have a staff meeting on either Wednesday, July 13, or Friday, July 15, 2005. No such staff meeting took place. (Forde Tr. 119, Exh. 18, attached to Defendants papers; Forde Decl. Par. 17; Fuentes Decl. Par(s). 6-7).

59.     **Denied**. No such meeting ever took place. (Id. See response 58 above). Moreover, documentary evidence supplied by Defendants show that Dr. Arsht saw a total of 51 patients' on July 19, 2005, from 8:00 a.m. to 4:00 p.m., as well as performing 2 surgeries. (Pl's Exh. 11, Arsht Decl. Par. 8).

60.     **Denied**. (Id. See response 59 above).

61.     **Denied**. (Id. See response 59 above).

62.     **Denied**. (Id. See response 59 above).

63.     **Denied**. Both Plaintiff and Ms. Fuentes testified that during the week of July 18, 2005, Defendant Arsht was out of the office, and based on their information, he was in Florida. (Forde Dep. Pg(s). 120-121; Fuentes Aff. dated September 10, 2007, Par. 9).

64.     **Denied**. (Id. See response 59 above).

65.     **Denied**. Dr. Arsht's phone records are not conclusive or show one way or the other whether he did call from Florida on July 19, 2005, he testified that when he is in Florida, he stays with family, and he can use their telephone to call. (Arsht Dep. Pg(s). 30-31, 37, 59).

66.     **Denied**. Dr. Arsht changed his schedule very often, and that she only changed the surgery log if he instructed her to do so. (Forde Dep. Pg(s). 50, 63-64; Pl's Exh. 12). Ms. Fuentes testified that the week before July 18, 2005, Defendant Arsht instructed her to cancel his appointments for the following week. (Fuentes Aff. Par. 9). Notwithstanding

the foregoing, the fact that Dr. Arsht was in the office on July 19, 2005, saw 51 patients and had performed 2 surgeries undermines that a meeting took place on that day. (Pl's Exh. 11; Arsht Decl. Par. 8).

67. **Denied**. Plaintiff testified that she only made changes to schedule, if she was instructed to do so by Arsht. That sometimes Arsht told her to keep names on the schedule so he doesn't lose his operation room privileges. (Forde Dep. Pg(s). 123-125, Pl's Exh. 12).

68. **Denied**. (Id. See response 67 above).

69. **Denied**. (Id. See response 67 above).

70. **Denied**. Plaintiff testified that if there were Monday Yankee Home Games in the summer, Dr. Arsht attended the same, because he had season tickets. (Forde Dep. Pg(s). 194-195). Defendant Arsht confirmed under oath that he told people that he had season tickets for the Yankees. (Arsht Dep. Pg(s). 42-43, 54-56).

71. Admitted.

72. **Denied**. At all times during her tenure, Plaintiff's work performance was satisfactory. For example, Defendant Arsht's Practice income increased, and Defendant Arsht thought it to be appropriate. Moreover, Plaintiff always checked with Dr. Arsht, before leaving for the day, unless he was not in the office. (Forde Dep. Pg(s). 76-78; Forde Decl. Par(s). 16, 20; Pl's Exh. 10).

73. **Denied**. Plaintiff was never apprised of these allegations. Moreover, Plaintiff asserts that after her discrimination claim, Dr. Arsht created these false allegations to protect himself. (Forde Dep. Pg(s). 76-78, 156, 182-193).

74. **Denied**. As reflected by the contents of these documents, these two patients did not need any certification. Notwithstanding the foregoing, during that relevant time period the certification duty fell to Ms. Potts, not Plaintiff. (Arsht Dep. Pg(s). 19-20).

75. **Denied**. Plaintiff was not the only staff member required to return patients' calls. Ms. Kurlander and Ms. Fuentes were also charged in returning calls. (Fuentes Decl. Par. 11; Forde Decl. Par(s). 12-13).

76. **Denied**. See response 73 above.

77. **Denied**. Plaintiff never ignored Arsht's e-mails, nor did she ever leave without checking with him. (Forde Decl. Par. 16).

78. **Denied**. At no time was Plaintiff insubordinate to Dr. Arsht or anyone else at Beth Israel. (Forde Dep. Pg(s). 76-79; Kurlander Dep. Pg(s). 32, 46; McCann Dep. Pg(s). 18, 40).

79. **Denied in part,** admitted in part. Plaintiff, who was identified by Defendant Arsht's July 26, 2005 e-mail to Handler as being one of his Secretaries, was never apprised by him as lacking in work performance or had an attitudinal problems. (Forde Dep. Pg(s). 76-78; Forde Decl. Par(s). 10, 20).

80. **Denied**. See response 73 above.

81. **Denied**. Plaintiff was never apprised that Defendant Arsht wanted to meet with her regarding her alleged performance problems. (Forde Dep. Pg(s). 76-78, Forde Decl. Par(s). 18, 20).

82. **Denied**. It was Plaintiff who requested that Dr. Arsht, Mr. Fuentes, and Ms. Kurlander meet with her on July 28, 2005. She requested this meeting after her sonogram showed a healthy baby and reflecting her expectancy date. (Forde Dep. Pg(s). 94-99, 101-

103; Fuentes' Aff. dated September 10, 2007, Pars. 10-11; Fuentes' Decl. dated December 14, 2007, Pars. 6-7).

83. **Denied**. There was never any meeting held on July 19, 2005. (Fuentes Aff'd. Par(s). 10-11; Forde Decl. Par(s). 18). Moreover, no discipline or work performance issues were discussed at the July 28, 2005 meeting. (Id.).

84. **Denied in part**, admitted in part.

84(a) At the meeting, Ms. Forde announced her expectancy, and requested the appropriate disability forms from Ms. Bahr. (Fuentes Aff. Par. 10; Forde Decl. Par. 19).

85. **Denied in part**, admitted in part. While Plaintiff was congratulated by Dr. Arsht, there was never any discussion of her job performance whatsoever. (Forde Decl. Par. 19; Fuentes Aff. Par. 19; Fuentes Decl. Par. 7).

86. **Denied**. Both Defendant's Hospital and Dr. Arsht learned of Plaintiff's pregnancy in early July 2005, after she fainted at work, which was witnessed by Dr. Arsht's partner and his staff. Moreover, Dr. Arsht and Defendant were aware that Ms. Forde had a pregnancy blood test performed at Defendant Hospital. Moreover, after the blood test results showed that Ms. Forde was pregnant, she was prescribed pre-natal vitamins which she took daily, in open view, at work. Furthermore, Defendant Arsht made comments about Plaintiff's physical appearance and condition. (Forde Dep. Pg(s). 82-88, 91-92, 104).

87. Admitted.

87(a). Moreover, she also only learned of Plaintiff's termination after the fact, on July 28, 2005. (Kurlander Dep. Pg. 52).

88. **Denied**. (Id. See response 86 above).

11

89.    **Denied**. (Id. See response 86 above).

90.    Admitted.

90(a). In addition, Plaintiff felt dizzy, and asked Ms. Fuentes to drive her home. Moreover, the other Physician was Dr. Reich, who was also Dr. Arsht practice partner. (Forde Dep. Pg(s). 80-83).

91.    **Denied in part**. (Id. See response 86 above).

92.    **Denied**. Dr. Arsht never denied that Plaintiff was having a blood test. During his deposition he answered that he did not recall if Plaintiff told him that she was having a blood test. (Arsht Dep. Pg. 105).

93.    **Denied in part**, admitted in part. While Plaintiff did not specifically tell Defendant Arsht of the reason for the blood test, she told him it will be performed by Beth Israel's OBGYN Practice, on the second floor of the Practice building. (Forde Dep. Pg(s). 85-88).

94.    **Denied in part**. Plaintiff testified that she kept the pre-natal vitamins in open view, on her desk, and took them daily. (Forde Dep. Pg(s). 91-92).

95.    **Denied in part.** Plaintiff scheduled the sonogram about 1 month after taking the pregnancy blood test. She also testified that the sonogram was to check her tummy. (Forde Dep. Pg(s). 94-99).

96.    Admitted.

97.    **Denied**. At no time did anyone at the practice ever complain of Plaintiff's work performance. Rather Dr. Arsht was happy with her work. (Forde Dep. Pg(s). 76-78; Forde Decl. Par(s). 18-19; Fuentes Decl. Par(s). 4, 7).

98.     **Denied**. During her tenure with Defendant's, no one ever complained about Plaintiff's performance, including Dr. Arsht. Moreover, as Dr. Arsht's secretary, Ms. Forde's probation was over on May 14, 2005. (Id. See response 97 above).

99.     Admitted in part, **denied in part.** Plaintiff's performance did not warrant her termination on August 4, 2005. (Forde Dep. Pg(s). 76-78; Forde Decl. Par(s). 18-19; Fuentes Decl. Par(s). 4, 7).

100.    **Denied**. This is a self-serving hearsay statement by Defendant Arsht. There is no corroborating evidence and Mr. James Pelligrinon was not identified by Defendant's as a witness.

101.    **Denied**. While Plaintiff's states as Defendant Arsht's secretary between February 2005 and June 2005, deemed her probationary period to be 3 months, Defendant's Hospital's policy required that a supervisor document and discuss the employees' work performance to enable them to improve during their probationary period. (Dr. McCann's Dep. Pg(s). 20-21, Pl's Exh. 9).

102.    **Denied**. On August 4, 2005, Plaintiff was summarily terminated without any reason or justification. (Forde Dep. Pg(s). 158-159).

103.    **Denied**. During that meeting Plaintiff was not given the opportunity to say anything. Rather a security guard escorted her out of there. (Id. See response 102 above).

104.    **Denied**. When Plaintiff contacted Handler, he advised her that he was not made aware of her termination. Moreover, the purpose of Plaintiff's call was not to seek another job, but to ascertain the reason for her termination. (Forde Dep. Pg(s). 164-165).

105.    **Denied**. Ms. Fuentes although concede by Ms. Kurlander that she was a very poor employee, was not terminated on August 4, 2005 was because unlike Plaintiff she was

not pregnant, expectant or asked for pregnancy disability forms. (Kurlander Dep.Pg(s). 49-52).

106. **Denied**. (Id.).

107. **Denied**. Both Ms. Forde and Ms. Fuentes, as Non-Union Clerical/Technical employees had 3 months probationary periods. (Pl's Dep. Pg(s). 39-41; Pl's Exh. 9; Handler Dep. Pg(s). 33, 67-68).

108. Admitted.

109. **Denied**. The EEOC dismissed Ms. Forde's charge, issued her a Notice of Right to Sue, emphasizing that although based on the information obtained, it cannot conclude violation of the statutes the EEOC cannot certify that Defendant was in compliance with the statutes. (Exhibit 7, attached to McEvoy's Decl.).

110. **Denied**. Plaintiff testified that after she took the pregnancy blood test, at Defendant Hospital, Dr. Arsht made peculiar comments, about her appearance and physical condition. (Plaintiff's Dep. Pg. 104).

111. Admitted.

111(a). However, Plaintiff was terminated after she passed her 3 months probation, and did not receive the benefit, of Defendant's appraisal and progressive discipline procedure. (Pl's Exh. 9).

112. **Denied in part.** Defendant Arsht sent an e-mail to Bahr, on July 26, 2005, a day after learning that Plaintiff was taking July 27, 2005 off to have a sonogram performed at Defendant's Hospital. (Forde Dep. Pg(s). 94-99).

113. **Denied in part**. Both e-mails, that were sent to Handler were dated July 26, 2005, and July 27, 2005, soon after finding that Plaintiff was getting a sonogram. Moreover, the

14

contents of the letter reference both Secretaries. However, Ms. Forde was singled out for termination. Interestingly, neither Dr. Arsht's superior Dr. McCann, nor his Physician Assistant, Ms. Kurlander were aware of Plaintiff's impeding termination. (Forde Dep. 94-99; Exh. L attached to Arsht Decl.; McCann Dep. Pg. 21; Kurlander Dep. Pg. 52).

Dated:  New York, New York
        December 17, 2007

                        Respectfully submitted,
                        LAW OFFICES OF LEE NUWESRA

                        */s/ Lee Nuwesra*
                        LEE NUWESRA (LN 5851)
                        Attorney for Plaintiff
                        Olivia Forde
                        60 East 42nd Street, Suite 838
                        New York, NY 10017
                        (212) 682-0655

To:    Rory McEvoy, Esq.
        Jason R. Bogni (JB 3597)
        Edwards, Angell, Palmer & Dodge, LLP
        Attorney for Defendants
        750 Lexington Avenue
        New York, New York 10022
        (212) 308-4411

This document was created with Win2PDF available at http://www.daneprairie.com.
The unregistered version of Win2PDF is for evaluation or non-commercial use only.

Case 1:06-cv-00901-DC    Document 22    Filed 12/17/07    Page 16 of 16